U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

MAY 16 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JESSE GILMORE, ET AL | CIVIL ACTION NO. 06-1509 (LEAD) |
| | 06-1510 (MEMBER) |
| | 06-1511 (MEMBER) |
| | 06-1512 (MEMBER) |
| | 06-1632 (MEMBER) |
| | 06-1633 (MEMBER) |
| | 06-1634 (MEMBER) |
| versus | JUDGE TRIMBLE |
| RICHARD STALDER, ET AL | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court are four (4) motions to strike certain affidavits [R. 148, 149, 150, 151] filed in support of defendants' motions to dismiss or, in the alternative, for summary judgment [R. 136, 137, 138, 139, 140, 144][1] filed by plaintiffs Gregory Cummings (hereinafter "Cummings"), Dexter Vassar (hereinafter "Vassar"), Jesse Gilmore (hereinafter "Gilmore"), Alexander Dontay Williams (hereinafter "Williams"), Christopher Trahan (hereinafter "Trahan"), and Peter Stewart (hereinafter "Stewart"). For the reasons expressed herein, this court finds that plaintiffs' motions should be GRANTED in part and DENIED in part.

---

[1] Defendants filed an additional motion to dismiss or, in the alternative, for summary judgment as to plaintiff Thomas Hall [R. 143], but Hall did not file a motion to strike in response, even though defendants attached the same affidavits complained of by plaintiffs in the motions to strike currently before the court.

1

I. **Background**

A. **Relevant Facts**

Plaintiffs filed the instant suits on September 1, 2006, alleging various injuries and damages at the hands of defendants while being temporarily housed at Jena Correctional Facility (hereinafter "Jena") after being evacuated in the wake of Hurricanes Katrina and Rita.

Defendants, James Leblanc[2] (hereinafter "Leblanc"), Warden T.W. Thompson (hereinafter "Thompson"), Major Brad Rogers (hereinafter "Rogers"), Jerry English (hereinafter "English"), Paul Guillot (hereinafter "Guillot"), Tommy White (hereinafter "White"), Horace Lofton (hereinafter "Lofton"), Sergeant Louis Edwards (hereinafter "Edwards") and Sergeant Thomas Pietsch (hereinafter "Pietsch") (collectively "Defendants") filed motions seeking dismissal of plaintiffs' claims in each instance on the basis that plaintiffs failed to exhaust all available administrative remedies as required by the Prison Litigation Reform Act[3] before filing suit under 42 U.S.C. § 1983. In support of these motions, defendants offer the sworn affidavits of various witnesses, including Tracy DiBenedetto (hereinafter "DiBenedetto"), Darren Boyd (hereinafter "Boyd") and Cheree Chapman (hereinafter "Chapman"). DiBenedetto is an employee of the Louisiana Department of Public Safety and Corrections (hereinafter "DPSC"). Boyd and Chapman are employees of the Calcasieu Parish Sheriff's Department (hereinafter "Sheriff").

Plaintiffs filed the instant motions to strike the affidavits of DiBenedetto, Boyd and

---

[2] Leblanc was substituted for Richard Stalder, former Secretary of the Louisiana Department of Public Safety and Corrections, in accordance with Fed. R. Civ. P. 25(d).

[3] 42 U.S.C. § 1997(e).

2

Chapman on the basis that the existence of these affidavits was not made known to them during discovery and, as such, the inclusion of these affidavits as support for defendants' affirmative defense of non-exhaustion of administrative remedies prejudices them in rebutting defendants' affirmative defense of non-exhaustion. Plaintiffs Cummings, Gilmore and Vassar request, alternatively, further discovery in their cases in order to combat this alleged prejudice.

The court has examined all four motions to strike by plaintiffs, as well as the affidavits at issue. The affidavits can be grouped into three distinct groups: DiBenedetto affidavits, Boyd affidavits and Chapman affidavits. While plaintiffs filed separate motions to strike these affidavits, we find that our consideration of the issues raised should be configured around these three affidavit groups, rather than around the four motions because all the affidavits in each group are virtually identical and differ only in their reference to a specific plaintiff.

### B. Applicable Standards

Fed. R. Civ. P. 56(e) provides that affidavits submitted in support of a motion for summary judgment must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated." Conclusory or unsupported testimony shall not satisfy the requirements of Rule 56(e) and all such affidavits are subject to timely motions to strike.[4] A party may object to the form of an affidavit before or along with its response in opposition to a motion for summary judgment at issue. In the absence of a gross miscarriage of justice, a party who did not object to the form of

---

[4] <u>Marshall on Behalf of Marshall v. East Carroll Parish Hosp. Serv. Dist.</u>, 134 F.3d 319, 324 (5th Cir. 1998).

an affidavit before opposing the underlying motion may not appeal the court's ruling on the motion on the grounds that the affidavit in question did not conform to the requirements of Fed. R. Civ. P. 56(e).[5]

Fed. R. Civ. P. 26 imposes on parties a duty to disclose certain information initially, during discovery and pre-trial. Rule 26(b)(1) provides, in part, that

> "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."

Parties to a suit have an affirmative duty to timely supplement disclosures previously made when any party learns that its prior disclosure has become incomplete or incorrect and this additional information has not otherwise been made known to the other party or parties during the discovery process.[6]

Subsection (b)(2)(C) of the same rule enables a district court, on its own or on a motion from a party, to limit the frequency or extent of otherwise discoverable materials when the discovery at issue would be "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." The court may also limit such discovery when the party seeking discovery has had ample opportunity to obtain the information during discovery. If, after examining the discovery at issue, the court finds that

---

[5] Hicks v. Harris, 606 F.2d 65 (5th Cir. 1979); Auto Drive-Away Co. of Hialeah, Inc. v. I.C.C., 360 F.2d 446 (5th Cir. 1966).

[6] Fed. R. Civ. P. 26(e)(1).

4

the burden or expense of the discovery sought outweighs its anticipated benefit in light of the importance of the issues and the role of that discovery in resolving the issues, the court may limit the discovery of otherwise discoverable materials.

Fed. R. Civ. P. 26(b)(3) contains the substance of what is commonly referred to as the federal attorney work product discovery exclusion. This rule provides that documents and tangible things that are prepared in anticipation of litigation or trial by another party or that party's representative are not subject to discovery unless these items are otherwise discoverable under subsection (b)(1) and the party seeking discovery demonstrates substantial need for these items which cannot be met without undue hardship by equivalent means. The burden of proof rests with the party invoking the protection of the attorney work product exclusion to expressly claim such privilege and describe "the nature of the documents, communications, or tangible things not produced or disclosed" in such a way that opposing parties may respond to the claimed privilege. A party seeking discovery of evidence which the court deems to be attorney work-product must bear the burden of establishing substantial need and hardship such that the court should apply the exceptions of subsection (b)(3)(A).[7]

## II. Analysis

### A. DiBenedetto's affidavits

DiBenedetto, an executive staff officer, was tendered as a witness by DPSC for purposes of its Rule 30(b)(6) deposition on January 11, 2008.[8] DPSC designated DiBenedetto as its

---

[7]Hodges, Grant & Kaufmann v. U.S., 768 F.2d 719, 721 (5th Cir. 1985).

[8]Deposition of DPSC [R. 161-5] at pp. 109-10.

witness to address inmate ARPs at the headquarters level, also known as "second step."[9] On July 26, 2007, nearly six (6) months prior to her testimony on behalf of DPSC, DiBenedetto executed several affidavits pertaining to whether or not certain plaintiffs in these cases had filed ARPs concerning the alleged events at Jena. Plaintiffs contend, and defendants do not dispute, that they were not made aware of the existence of these affidavits at any time prior to defendants' motions to dismiss, to which these affidavits were attached as support for defendants' affirmative defense of non-exhaustion of administrative remedies. Defendants assert that these affidavits are subject to the attorney work product exclusion and, as such, defendants had no duty to produce them during discovery.[10] Additionally, defendants claim that these affidavits meet the requirements of Fed. R. Civ. P. 56(e) for affidavits in support of motions for summary judgment and are, therefore, competent summary judgment evidence.[11]

The court has reviewed the affidavits at issue and finds that they are not the sort of documents or other tangible items to which the attorney work product exclusion is intended to apply. The purpose and perimeters of the attorney work product were addressed by the Supreme Court of the United States in <u>Hickman v. Taylor</u>.[12] The court affirmed the ruling of the United States Third Circuit Court of Appeals exempting the sought after written witness statements as attorney work product. Explaining its holding, the Court described the purpose of the exclusion as protecting the essential privacy of an attorney's mental impressions, legal theories and

---

[9] R. 161 at p. 4; R. 161-5 at p. 112.

[10] R. 161 at pp. 4-6.

[11] R. 161 at pp. 6-8.

[12] 329 U.S. 495 (1947).

strategies as he prepares a client's case.[13] The Court cautioned, however, that not

> "all written materials obtained or prepared by an adversary's counsel with any eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."[14]

Thus, the Court was clear that the attorney work product exclusion does not provide a device to hide the existence or substance of material, discoverable facts, documents or other evidence.[15]

The affidavits executed in 2007 by DiBenedetto set forth her job title and responsibilities, as well as her personal knowledge of DPSC's inmate ARP database and prisoner transfer records. These affidavits state that DiBenedetto personally reviewed the database and transfer records which show that plaintiffs Cummings, Gilmore, Vassar, Williams, Trahan and Stewart were transferred to Jena in 2005 and filed no ARPs whatsoever following their incarceration at Jena, while other inmates transferred to Jena in 2005 did file ARPs following their transfers.[16]

Examining these affidavits in light of the jurisprudence discussed above, we cannot agree that they contain an attorney's mental impressions or strategy so as to constitute attorney work product. While defendants' assertion that these affidavits were prepared for the sole purpose of litigation is accepted as true, it does not dictate an exclusion from discovery in this case. To the

---

[13] Id., at 511.

[14] Id.

[15] Upjohn Co. v. U.S., 449 U.S. 383 (1981); U.S. v. Nobles, 422 U.S. 225 (1975).

[16] Affidavits attached as exhibits to defendants motions to strike [R. 137, 138, 139, 140].

7

contrary, we find that DiBenedetto's affidavits are based on the same computer generated report of all inmate evacuee ARPs DiBenedetto provided to plaintiffs during her testimony on behalf of DPSC. The conclusions reached in her affidavits: that none of the plaintiffs filed an ARP concerning alleged events at Jena, or any other matter, following their evacuation to Jena; that other inmate evacuees did file ARPs, are identical to statements made during her testimony on behalf of DPSC. We find no attorney impressions, legal theories or strategies present in these contested documents which would qualify them as privileged work product. Examining plaintiffs' requests for production and interrogatories propounded upon defendants, we must agree with plaintiffs that DiBenedetto's affidavits certainly were encompassed in these discovery requests. Defendants had a duty to apprise plaintiffs of the existence of these affidavits and failed to do so. Accordingly, this court finds that plaintiffs' motion to strike DiBenedetto's affidavits should be granted. We will not consider these affidavits in conjunction with defendants' motions to dismiss.

We next address plaintiff Cummings, Gilmore and Vassar's request for additional discovery in this case to allow them to access the DPSC inmate ARP database. Plaintiffs assert that this discovery is necessary to enable them to defend their claims against defendants' allegations of non-exhaustion. The court has reviewed all of the testimony provided by DiBenedetto on behalf of DPSC and, as above, finds that both the testimony and the affidavits were based solely on the inmate evacuee ARP report provided to plaintiffs during DPSC's deposition. Plaintiffs questioned DiBenedetto extensively on this document and the conclusions she drew from it: that none of the plaintiffs had filed an ARP related to alleged events at Jena and that other inmate evacuees had filed ARPs. Plaintiffs' main objection seems to lie with

8

DiBenedetto's conclusion and inference that other inmate evacuees availed themselves of ARPs and plaintiffs cannot, therefore, argue non-availability of remedies. The court notes that, while DiBenedetto draws the conclusion that other inmate evacuees filed ARPs, she expressly states that she cannot attest to whether any of these ARPs relate to alleged events at Jena.[17] Accordingly, we will attribute to this statement proper weight when issues of non-exhaustion are before us.

Given the availability of the inmate evacuee ARP report, as well as plaintiffs' opportunity to question DiBenedetto on the same conclusions reached by her affidavit, this court finds that additional discovery is not warranted under Fed. R. Civ. P. 26(b)(2)(C). This portion of plaintiffs' motion will be denied accordingly.

### B. Boyd Affidavits

Boyd, an assistant warden at Calcasieu Correctional Center, was tendered by the Sheriff as a witness for purposes of that office's Rule 30(b)(6) deposition on December 18, 2007. In October of 2007 Boyd executed affidavits stating that he acts as the "Administrative Remedies Procedure Coordinator" for both the Calcasieu Correctional Center and the Sheriff's Prison. The affidavits further state that he reviewed the inmate records of plaintiffs Williams and Trahan and that neither inmate filed an ARP concerning any alleged events at Jena during the time they were incarcerated at Calcasieu Correctional Center following their stay at Jena. The affidavits attest that procedures are in place to accommodate the filing of ARPs concerning alleged incidents at other facilities administered by the Louisiana Department of Public Safety and Corrections (as

---

[17]Deposition of DPSC [R. 161-5] at pp. 126-27.

Jena was during the alleged events at issue). Defendants offer these affidavits in support of their motions to dismiss or for summary judgment as to claims by plaintiffs Williams and Trahan.

Plaintiffs Williams and Trahan filed motions to strike[18] Boyd's affidavits from the record in this case, claiming that these affidavits should have been disclosed to them during discovery and defendants' failure to do so prejudices them in their rebuttal of defendants' affirmative defense of non-exhaustion. Defendants again assert that these affidavits are attorney work product and therefore excluded from discovery. Defendants also suggest that Boyd had no affirmative duty to alert plaintiffs to the existence of the affidavits.

The court has examined the affidavits in question as well as Boyd's testimony on behalf of the Sheriff's office. We find that, as is true of the DiBenedetto affidavits, Boyd's affidavits are not attorney work product so as to be properly excluded from discovery in this case. Boyd's affidavits do not contain attorney impressions, legal theories or strategy. Moreover, they draw the same conclusions as to which Boyd testified several months later.[19] We also find that these affidavits fail to meet the requirements of Fed. R. Civ. P. 56(e) which requires that all documents referenced in an affidavit must be attached for review. While Boyd's affidavits do reference the "Inmate Handbook," which is attached, they also reference inmate records upon which the conclusions discussed above are based and these documents are not attached, either by summary or otherwise. Finally, we find that, given the conclusions reached in these affidavits and their central role in defendants' affirmative defense of non-exhaustion, defendants did have an affirmative duty to disclose the affidavits to plaintiffs. The facts underlying these affidavits are

---

[18] R. 149, 150.

[19] See, generally, Sheriff's office 30(b)(6) deposition [R. 161-3].

clearly discoverable and material and, thus, are not shielded from discovery by the execution of an affidavit for litigation purposes.[20]

Accordingly, plaintiffs' motion to strike will be granted. The court will not consider Boyd's affidavits when addressing defendants' motions to dismiss or for summary judgment.

### C.  Chapman Affidavit

Chapman is a former Sheriff's office employee who coordinated inmate ARPs at Calcasieu Parish Correctional Center from October 2005 until December 2006. She executed an affidavit on October 15, 2007 attesting that the inmates in that facility had access to the same ARP procedure allowing for grievances concerning alleged events at DPSC facilities described by Boyd in his affidavit during her time as ARP coordinator. Defendants attached Chapman's affidavit as support for their motion to dismiss or for summary judgment as to all claims by plaintiff Trahan.

Plaintiff filed a motion to strike[21] Chapman's affidavit from the record in this case, alleging that Chapman was not known to plaintiffs as a potential witness and was not deposed for that reason. Plaintiff asserts that defendants had a duty to disclose the existence of the affidavit during discovery given its conclusions and their importance to defendants' affirmative defense of non-exhaustion. Plaintiffs claim that defendants' failure to produce this document and sudden inclusion of the same in their dispositive motion prejudices them.

Defendants state only that plaintiffs did not ask to take Chapman's deposition and that,

---

[20]Hickman v. Taylor, 329 U.S. 495, 511 (1947).

[21]R. 150.

11

as with both the DiBenedetto and Boyd affidavits, Chapman's affidavit is attorney work product prepared for the sole purpose of litigation, exempting it from discovery in this case.[22]

Again, the court does not agree and finds this particular affidavit a more egregious abuse of the attorney work product exclusion than the others considered herein. Defendants knew that they would be soliciting discoverable and material information from this witness and would be using her affidavit as support for a dispositive motion before the court. Defendants' failure to disclose even the existence of this witness is highly disfavored by this court. Chapman's affidavit also does not meet the requirements of Fed. R. Civ. P. 56(e) concerning attachment of documents referred to or summaries thereof.

Accordingly, the court finds that plaintiff's motion to strike Chapman's affidavit from the record should be granted. The court will not consider this affidavit in support of defendants' motion to dismiss or for summary judgment against plaintiff Trahan.

### III.   CONCLUSION

Having carefully examined the law and arguments presented by the parties, as well as the affidavits and available subsequent testimony, the court finds that plaintiffs' motions to strike the affidavits at issue should be granted. The court finds no basis for defendants' assertion that these affidavits are protected from discovery by the attorney work product exclusion and, accordingly, finds that defendants had a duty to timely disclose the existence of these affidavits to plaintiffs during the course of discovery in this case. We do not find that additional discovery is warranted to cure prejudice in the case of DiBenedetto and Boyd's affidavits, however, as

---

[22] R. 161 at p. 6.

plaintiffs received notice of these conclusions during depositions with both witnesses.

The court will issue an order reflecting its findings as detailed herein.

Alexandria, Louisiana
May 1 6 , 2008

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE