U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

JUL 0 1 2008

ROBERT H. SHEMWELL, CLERK
BY DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

**JESSE GILMORE, ET AL**

**CIVIL ACTION NO. 06-1509 (LEAD)**
**06-1510 (MEMBER)**
**06-1511 (MEMBER)**
**06-1512 (MEMBER)**
**06-1632 (MEMBER)**
**06-1633 (MEMBER)**
**06-1634 (MEMBER)**

**versus**

**JUDGE TRIMBLE**

**RICHARD STALDER, ET AL**

**MAGISTRATE JUDGE KIRK**

---

## MEMORANDUM RULING

Before the court are seven (7) motions to dismiss[1] filed by defendants in these cases, consolidated for pre-trial purposes[2] only. The court has reviewed the various motions and finds that, for the reasons expressed below, they should be DENIED.

### I. BACKGROUND

#### A. Relevant Facts

The circumstances which precipitated this suit have been recounted several times by this court, but, in light of the seriousness of the matter before us, we deem it prudent to review them

---

[1]R. 136, 137, 138, 139, 140, 143, 144.

[2]R. 47. Given that the parties made identical arguments in all of the motions and oppositions, the court finds that the judicial economy is best served by addressing all the motions in this single ruling.

5

here.

Hurricane Katrina made landfall in Louisiana on August 29, 2005. In the days that followed, New Orleans' levee system failed and flood waters enveloped the city. Hurricane Rita came ashore near the Texas and Louisiana gulf coast border on September 24th of that same year, causing devastating damage to the southwestern Louisiana communities of Cameron and Lake Charles, to name just a few.

Plaintiffs Jesse Gilmore (hereinafter "Gilmore"), Thomas Hall (hereinafter "Hall"), Gregory Cummings (hereinafter "Cummings"), Dexter Vassar (hereinafter "Vassar") were incarcerated at Jefferson Parish Prison (hereinafter "JPP") on the date that Hurricane Katrina made landfall and were evacuated to a temporary corrections facility at Jena, Louisiana (hereinafter "Jena") on or about August 31, 2005.[3] Plaintiffs Peter Stewart (hereinafter "Stewart"), Christopher Lee Trahan (hereinafter "Trahan") and Alexander Dontay Williams (hereinafter "Williams") (collectively "Plaintiffs") were pre-trial detainees at Calcasieu Parish Correctional Center (hereinafter "CPCC") and were evacuated to Jena from CPCC shortly before Hurricane Rita made landfall.[4]

The Louisiana Department of Public Safety and Corrections (hereinafter "DPSC") continued operations until approximately October 9, 2005, at which time all evacuees had been transferred from Jena to other facilities around the state or, in some cases, released from

---

[3]See, for example, R. 140 at Exhibit 6 (letter from Lt. Col. Danny Mills detailing the arrival of inmates from JPP to Jena).

[4]See, for example, R. 140 at Exhibit 6 (email correspondence indicating the arrival of evacuees from CPCC on September 22, 2005 and September 23, 2005).

custody.[5]   Plaintiff Gilmore was transferred from Jena to West Carroll Detention Center (hereinafter "West Carroll")[6], plaintiff Cummings was transferred to Franklin Detention Center (hereinafter "Franklin")[7], plaintiffs Hall[8] and Vassar[9] were transferred to Allen Correctional Center (hereinafter "Allen"), plaintiffs Trahan[10] and Stewart[11] were transferred back to CPCC, and plaintiff Williams was transferred  Franklin.[12]

Plaintiffs filed suit on September 1, 2006 alleging violations of his civil rights under 42 U.S.C. § 1983 and injuries resulting from intentional infliction of emotional distress, assault and battery and negligence under Louisiana law.[13]  Defendants filed the instant motions in March of 2008, urging the affirmative defense of failure to exhaust available administrative remedies and seeking dismissal of all claims against them on that basis.  Defendants attached affidavits executed by Tracy DiBenedetto (DPSC employee), Darren Boyd (DPSC employee) and Cheree Chapman (Calcasieu Parish Sheriff's Department employee) which were challenged by plaintiffs who asserted that these depositions were not disclosed to them and were, therefore, improper as

---

[5]R. 140 at "Exhibit 1" [30(b)(6) deposition of DPSC dated 1/11/2008; testimony by Deputy Warden Jerry Goodwin].

[6]R. 140 at "Exhibit 3," Request No. 7.

[7]R. 136 at "Exhibit 3," Request No. 7.

[8]R. 143 at "Exhibit 3," Request No. 7.

[9]R. 144 at "Exhibit 5," Request No. 7.

[10]R. 137 at "Exhibit 2," p. 33, lines 9-13.

[11]R. 139 at "Exhibit 2," p. 197, lines 2-8.

[12]R. 138 at "Exhibit 2," p. 61, lines 6-8.

[13]See, for example, plaintiff Gilmore's complaint [R. 1] at pp. 5-9.

the basis for defendants' motions to dismiss against each plaintiff. This court granted plaintiffs' motion to the extent that we held that the affidavits at issue should have been produced by defendants. To the extent that plaintiffs' motions to strike requested further discovery on the matters addressed in the affidavits, this court denied those motions. As discussed in our ruling on plaintiffs' motions, we will not consider these affidavits as they have been stricken.[14]

**B. Applicable Standards**

Defendant's motions are styled as motions to dismiss claims for failure to exhaust or, in the alternative, motions for summary judgment. Defendants assert that a motion to dismiss is the proper procedural device for raising the defense of exhaustion dispositively, while plaintiffs argue that a motion for summary judgment is the only proper device. The court must first consider, then, what standard should be applied: the standard of proof for motions to dismiss or that applicable to summary judgment.

Defendants urge the court to look to the jurisprudence of the United States Ninth Circuit Court of Appeals (hereinafter "Ninth Circuit") in considering their motions. Defendants cite Wyatt v. Terhune[15] in support of this argument. In that case, the circuit court held that non-jurisdictional failures to exhaust are "matters in abatement" rather than the merits of a case. As such, the court found them to be properly raised in a motion to dismiss.[16] The court cited prior case law in which it held that court may look beyond the pleadings in such motions in order to

---

[14]R. 171.

[15]315 F.3d 1108 (9th Cir. 2003).

[16]Id., at 1119.

determine factual issues surrounding exhaustion.[17]

Plaintiffs cite Gonzales v. Smith[18] as proof that the United States Fifth Circuit Court of Appeals (hereinafter "Fifth Circuit") views exhaustion as an issue as to which plaintiffs are entitled to a jury trial when a question of fact exists thereon. In that case, the U.S. District Court for the Eastern District of Louisiana, speaking through Judge Berrigan, adopted the report and recommendation of the magistrate judge denying defendants' motion for summary judgment on the basis that defendants failed to carry their burden of proof in that the evidence before the court demonstrated a fact question as to whether or not plaintiff had, in fact, filed a request for administrative remedy (hereinafter "ARP").

Defendants respond by pointing out that the Gonzales court did not consider the question of whether or not exhaustion is properly raised in an unenumerated motion to dismiss under Fed. R. Civ. P. 12(b) and, instead, merely ruled on the procedural device filed by the defendants in that case: a motion for summary judgment. The court agrees.

Gonzales, while a well-reasoned adjudication of a motion for summary judgment concerning exhaustion, does not provide the sense of the Fifth Circuit as to the issue presented in the instant case. Indeed, this case has not yet been reviewed by the circuit. The court has thoroughly researched this issue and finds no applicable pronouncement from the Fifth Circuit aside from Underwood v. Wilson[19], in which the court held that the exhaustion requirement was

---

[17] Id., citing Ritza v. Int'l. Longshoreman's and Warehouseman's Union, 837 F.2d 365 (9th Cir. 1998).

[18] 2007 WL 3046160 (E.D. La. 2007).

[19] 151 F.3d 292 (5th Cir. 1998).

not jurisdictional.[20]

The court has carefully reviewed the issue and finds that, while the goals of the PLRA are an important consideration, adjudication of the motion before us necessarily concerns matters beyond the scope of the pleadings, making summary judgment the appropriate standard in this matter, especially in light of the absence of Fifth Circuit guidance on this issue.

In adjudicating a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the court must determine whether the "...pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact..."[21] A "material fact" is one which, given its resolution in favor of one party or another, might affect the outcome of the suit under applicable law.[22] An issue is considered "genuine" when the evidence leaves open the possibility that a rational trier of fact might still return judgment in favor of the nonmoving party.[23]

Once the moving party has carried its burden of showing an absence of evidence to support the nonmoving party's case, the burden shifts to the non-moving party to come forward with specific facts showing a genuine factual issue for trial.[24] "Conclusory denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts

---

[20] Id., at 294-95.

[21] Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); American Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).

[22] Anderson, supra, 477 U.S 242 at 248.

[23] Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000), citing Anderson, supra, 477 U.S. 242, 248.

[24] Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

showing that a genuine issue of material fact remains to be tried.[25] Evidence presented, whether in support of or in opposition to a motion for summary judgment, must be of such character that it would be admissible at trial.[26] Where both parties have presented contradictory evidence, the court will resolve all such controversy in favor of the non-moving party, viewing the facts and evidence in the light most favorable thereto. General averments will not suffice, however, in place of specific factual proofs, as the court will not assume the existence of any material fact issue not pled by the non-moving party.[27]

**II. ANALYSIS**

The PLRA provides, in part, that

> "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[28]

Thus, exhaustion of available administrative remedies is a mandatory prerequisite to filing suit in federal district court.[29] The Louisiana Prison Litigation Reform Act (hereinafter "LPLRA") mirrors the federal provision, requiring exhaustion by a prisoner before a suit may be maintained in state district court.[30] Failure to exhaust administrative remedies is an

---

[25] SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

[26] Fed. R. Civ. P. 43(a); Roucher v. Traders & General Ins. Co., 235 F.2d 423, 424 (1956).

[27] Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994) (internal citations omitted).

[28] 42 U.S.C. § 1997e(a).

[29] Woodford v. Ngo, 548 U.S. 81 (2006), citing Booth v. Churner, 532 U.S. 731 (2001).

[30] La. R.S. 15:1181 - 91.

affirmative defense which, if not asserted, is waived.[31]

The PLRA provides no definition of the word "available" and, accordingly, the Fifth Circuit has construed this term in accordance with its ordinary and plain meaning: "capable of availing," "capable of use for the accomplishment of a purpose," and "accessible or may be obtained."[32]

Defendants' motion asserts that Louisiana law clearly establishes administrative remedies which could have and should have been exhausted by plaintiffs both during and after their stay at Jena. Defendants point out that it is undisputed that plaintiffs were supplied with paper, pencils and stamped envelopes.[33] Defendants offer the testimony of DiBenedetto as evidence that plaintiffs could have used these materials to send an ARP directly to DPSC headquarters.[34] Defendants also assert that, under Louisiana law, prisoners may initiate an ARP after transfer to another institution or release from incarceration.[35]

Plaintiffs refute these arguments, pointing out that defendants' own testimony proves that no formal grievance procedure was established at Jena and that, even if a direct ARP to DPSC headquarters was possible for plaintiffs, it was not "available" within the meaning of the PLRA

---

[31] Jones v. Bock, 549 U.S. 199 (2007); Carbe v. Lappin, 492 F.3d 325, 328 (5th Cir. 2007).

[32] Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998), overruled on other grounds, Jones v. Bock, supra.

[33] See, for example, R. 140-6, plaintiff's response to defendants' request for admissions, at number 4.

[34] R. 178 at pp. 4-5, quoting Rule 30(b)(6) deposition of DPSC.

[35] R. 140-2 at p. 6, citing La. Admin. Code Title 22, §§325(G)(8), (9).

because defendants never informed plaintiffs of this remedy.[36] Specifically, plaintiffs cite La. Admin. Code tit. 22 § 325 (E)(2) which provides:

> "Communications. Inmates must be made aware of the system by oral explanation at orientation and should have the opportunity to ask questions and receive oral answers. The procedures shall be posted in writing in areas readily accessible to all inmates."

Plaintiffs also cite the specific testimony of Warden Thompson, Deputy Warden Jerry Goodwin and Colonel Brad Rogers who each verified that no formal complaint or grievance system existed at Jena and that neither Warden Thompson, nor Deputy Warden Goodwin took any steps to inform inmate evacuees at Jena of any formal grievance procedure.[37]

Defendants do not refute this evidence and, instead, argue that plaintiffs may not claim ignorance of the law as an excuse for exhaustion. While La. Civ. C. Art. 5 certainly does charge Louisiana citizens with knowledge of the law, we find the Louisiana Administrative Code more pertinent as to the precise issue before us. Defendants had an affirmative duty to communicate specific information to plaintiffs when they were transferred to a DPSC facility from a parish facility, as the applicable grievance procedure differs from place to place.

This court has previously considered two cases concerning exhaustion of administrative remedies at Jena. In Dillon v. Department of Corrections[38] and Williams v. Thompson[39], we dismissed plaintiffs' claims based on failure to exhaust available administrative remedies. In

---

[36]R. 174 at pp. 8-9.

[37]R. 174 at pp. 10, 17.

[38]2008 WL 762075 (W.D. La. 3/20/2008).

[39]Civil Action No. 06-0663 at R. 35 (Judgment dated 12/10/2007).

both of those cases, plaintiffs admitted knowledge of how to file a grievance, but argued that the grievance procedure was unavailable to them because they feared reprisal. The case sub judice is distinguishable on the basis that plaintiffs deny any knowledge of the ARP protocol and this is not contradicted by the evidence before us.

Having reviewed the law and argument before us, we find that plaintiffs have adequately rebutted defendants' affirmative defense of exhaustion. Defendants do not refute evidence which suggests that they did not fulfill their obligation under the Louisiana Administrative Code to orally explain and answer questions concerning any applicable grievance system at Jena. Accordingly, defendants have not demonstrated the absence of any genuine issue of material fact concerning exhaustion and their motions must be denied.

## III. CONCLUSION

The court finds that defendants have failed to demonstrate the absence of any genuine issue of material fact concerning availability of administrative remedies in this case. Accordingly, defendants' motions must be denied.

Alexandria, Louisiana
July 1, 2008

**JAMES T. TRIMBLE, JR.**
**UNITED STATES DISTRICT JUDGE**